649 So.2d 541 (1994)
Roger Dale CARTER, Plaintiff-Appellant,
v.
WESTERN KRAFT PAPER MILL, et al., Defendants-Appellees.
No. 94-524.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*542 Christopher J. Roy Sr., Jerry Lytel Lavespere Jr., Alexandria, for Roger Dale Carter.
Frank A. Fertitta, Baton Rouge, for Western Kraft Paper Mill, et al.
Thomas Kimball Brocato, Alexandria, for Aetna Cas. & Sur. Co.
Before GUIDRY, C.J., and KNOLL and WOODARD, JJ.
KNOLL, Judge.
Plaintiff, Roger Dale Carter (Carter), and intervenor, Aetna Casualty and Surety Company (Aetna), appeal a directed verdict dismissing plaintiff's case. The issues presented on appeal are: (1) whether the trial judge applied the correct standard in granting defendant's motions for directed verdict; and, (2) whether the plaintiff's evidence is so insubstantial that the case should have been removed from the jury. We reverse in part, affirm in part, and remand.

FACTS
On December 15, 1990, Roger Dale Carter, an employee truck driver for Latexco, Inc. (Latexco), delivered a load of cardboard bales to Western Kraft Paper Mill, Inc. (Western Kraft). While unstrapping the load from the trailer of his eighteen-wheeler, a falling cardboard bale struck Carter, causing severe and debilitating injuries which included brain damage and partial blindness.
Carter filed suit against Western Kraft and its insurer, Safeco Insurance Company of America, alleging strict liability and negligence on the part of Western Kraft in the implementation of its unloading procedures, and its employee's negligence in causing the cardboard bale to fall on him. Defendants filed an answer and asserted that Carter's own negligence in failing to properly bind, load, and unload the cardboard bales caused his injuries. Latexco's worker's compensation insurer, Aetna, intervened for medical and indemnity benefits paid to Carter.
Before resting his case, Carter produced evidence that on previous occasions Western Kraft's employees began unloading trailers before truck drivers could finish unstrapping their loads and retreat to a safe area. Carter testified that Randy Norman (Norman), a Western Kraft employee, negligently bumped Carter's trailer with a clamp truck and caused a 700 pound[1] cardboard bale to fall on him. Carter argued that Norman either bumped his trailer with a clamp truck while en route to or from the cardboard bale storage bin or that Norman caused the cardboard bale to fall on him when Norman attempted to unload the rear of Carter's trailer. Norman testified that he did neither. However, Norman conceded that the clamp truck could cause a trailer to shake during unloading and that he could bump a trailer and not even feel it.
Notably, Carter could not remember how his accident occurred until after he received hypnosis and "age regression" therapy. At trial, Dr. Ronald Pryer, a psychologist, testified that Carter did not remember the details of his accident because of emotional trauma and organic brain damage. To enhance Carter's memory, Dr. Pryer testified that he used hypnosis and "age regression" therapy after which Carter was able to recall the details and causes of his accident.[2]
According to the defendants, Carter caused his own injuries by improperly loading and unloading the cardboard bales on his trailer. Defendants argued that Carter's load was "leaning" and unstable because Carter rested the cardboard bales upon a layer of loose cardboard. However, Carter testified that his load was stable when he began unstrapping it. Tommy Gaspard, an experienced *543 truck driver of 24 years, also testified that Carter's load was not leaning when he observed Carter's load immediately before the accident.
Carter admitted that while loading his trailer en route to Western Kraft, a cardboard bale had "busted," and that he had evenly distributed the now loose cardboard beneath the other cardboard bales to secure it. Defendants argued that the heavy cardboard bales compressed the loose cardboard, and when Carter released the strap exerting pressure on the cardboard bales, the loose cardboard expanded and caused a cardboard bale to catapult onto the plaintiff.
Carter countered the defendant's cardboard expansion argument with the testimony of Dr. Robert George Aitken, a Professor of Physics at Northwestern State University. Professor Aitken performed various scientific experiments to determine generally cardboard's co-efficient of friction and compression rate. Combining this experimental data and using higher math, Professor Aitken concluded that when Carter released the strap placing pressure upon the cardboard bale and its loose cardboard stratum, the expansion could not have been enough to cause the cardboard bale to fall on Carter because the loose cardboard remained largely compressed by the remaining weight of the cardboard bale. Professor Aitken also testified that the friction holding the cardboard bale in place was too great for the cardboard bale to just fall off the trailer without the intercession of another event, namely contact between the clamp truck and Carter's trailer.
On cross-examination, the defendants attacked Professor Aitken's conclusions. The defendants suggested that Professor Aitken made faulty assumptions in his calculations. However, Professor Aitken corrected his errors on the witness stand, and testified that his experiments and calculations withstood the possibility of error by providing a low to high range of assumptions and conclusions.
At the end of the plaintiff's case, the defendants made two motions for a directed verdict: one for plaintiff's strict liability claim and the other for plaintiff's negligence claim. The trial court granted both motions, stating that the plaintiff failed to prove his case by a preponderance of the evidence. The trial judge, commenting on Carter's failure to remember the facts of this case until after the lawsuit was filed, remarked: "The facts as described by the plaintiff in this case simply don't hold water."

STANDARD FOR DIRECTED VERDICTS
A motion for directed verdict is governed by LSA-C.C.P. Art. 1810, which states:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
Since 1979, the opinion of Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979) has set the standard for directed verdicts in jury trials:
The motion for directed verdict is a common law procedural device which has only recently found its way into the law of Louisiana through Article 1810 of the Code of Civil Procedure. The purpose of the directed verdict is that "it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict." Civil ProcedureWork of Louisiana Legislature for 1977 Regular Session, 38 La.L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir.1970).
Id. at 238.
In Campbell, the court also approved the Federal standard, quoting Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):

*544 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence not just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
373 So.2d at 239.
Thus, a directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986). The propriety of granting a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App.2d Cir.1991).
Under the foregoing legal principles the question is not whether in our view the plaintiff has proven his case against defendants by a preponderance of the evidence, but rather, whether, upon viewing the evidence submitted, we conclude that reasonable people could not have reached a verdict in favor of the plaintiff against the defendants. Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307 (La.App. 5th Cir. 1988), writs denied, 540 So.2d 327, 329 (La. 1989). The preponderance of the evidence rule is the standard for directed verdicts in non-jury trials. See Domingue v. Calcasieu Marine Nat. Bank, 520 So.2d 1166 (La.App. 3d Cir.1987); Semien v. PPG Indus., Inc., 413 So.2d 956 (La.App. 3d Cir.1982).
Questions of credibility should not be resolved by a directed verdict. Reilly v. Dynamic Exploration, Inc., 571 So.2d 140 (La.1990). Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Royal Ins. Co. v. Fireman's Fund Ins., 532 So.2d 372 (La.App. 3d Cir.1988). Evaluations of credibility play no part in reaching a decision on a motion for directed verdict. Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3d Cir.), writ denied, 515 So.2d 807 (La.1987); Campbell, supra, at 239-240.

Sufficiency of Plaintiff's Evidence
Our review of the record leads us to conclude that the trial court incorrectly applied the preponderance of the evidence standard to a directed verdict in a jury trial. Furthermore, the trial court should have left the evaluation of the evidence for determination by the trier of fact, the jury. We feel that our learned trial brother has made a credibility determination which should have been left for the jury.
We have thoroughly reviewed plaintiff's evidence in the light most favorable to plaintiff, and have drawn all reasonable inferences most favorable to him, making no evaluations of credibility since these have no place in a decision on a motion for directed verdict. We are of the opinion that there is evidence which, when viewed in the light most favorable to the plaintiff, could be sufficient to convince a reasonable and fair minded juror to return a verdict in favor of plaintiff's negligence claim.[3] The plaintiff's evidence in this regard was not so insubstantial that it should not have been presented to the jury. However, despite applying the incorrect legal standard for granting a directed verdict in a jury trial, the trial court reached *545 the proper conclusion when it granted a directed verdict to the defendants for the plaintiff's strict liability claim. The plaintiff has failed to present any evidence which could convince a reasonable and fair minded juror to return a verdict in his favor based upon strict liability. Moreover, plaintiff conceded at oral argument that a directed verdict was proper on the issue of strict liability.
Accordingly, the only fair and just solution in this case is to reverse that portion of the trial court's judgment granting a directed verdict to the defendants for the plaintiff's negligence claim and affirm that portion of the trial court's judgment granting a directed verdict to the defendants for the plaintiff's strict liability claim.
We are restrained from deciding the plaintiff's negligence claim with the record before us, because the defendants did not have an opportunity to present their defense after the plaintiff rested. When a trial judge grants a motion for a directed verdict, a court of appeal should not render judgment against a party who has had no opportunity to present evidence. Aetna Cas. & Sur. Co. v. Nero, 425 So.2d 730 (La.1983). Therefore, we remand this case to the trial court for a new trial consistent with the views expressed herein.

DECREE
For the foregoing reasons, we reverse and set aside that portion of the trial court's judgment granting a directed verdict to the defendants for the plaintiff's negligence claim and affirm that portion of the trial court's judgment granting a directed verdict to the defendants for the plaintiff's strict liability claim. We remand this case to the trial court for a new trial on plaintiff's negligence claim. Costs of the trial proceedings below and this appeal are assessed to the defendants-appellees.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] The parties stipulated that the cardboard bale weighed 700 pounds.
[2] Hypnosis has been recognized as a valid therapeutic technique since 1958. See Council on Scientific Affairs, Scientific Status of Refreshing Recollection by the Use of Hypnosis, 253 J.A.M.A. 1918 (1985). However, its evidentiary use in a civil case remains unsettled. See Landry v. Bill Garrett Chevrolet, Inc., 430 So.2d 1051 (La.App. 4 Cir.), rev'd and remanded, 434 So.2d 1103, 1105, on remand, 443 So.2d 1139 (La.App. 4 Cir.1983), writ denied, 445 So.2d 441 (La. 1984). The Louisiana Supreme Court has allowed hypnotically refreshed testimony in criminal cases, but suggests that such testimony may affect the credibility of the witness. State v. Wren, 425 So.2d 756 (La.1983).
[3] This statement does not express any view by this court regarding the ultimate merits of the plaintiff's case.