689 So.2d 554 (1997)
Jennifer BERNARD, Plaintiff-Appellant,
v.
FERRELLGAS, INC., et al., Defendants-Appellees.
No. 96-621.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
Rehearing Denied April 8, 1997.
*555 Kelly K.N. Sanford, Lafayette, for Jennifer Bernard.
L. Lane Roy, Thomas S. Stewart, Lafayette, Douglas R. Dalgleish, Peter F. Daniel, Kansas City, MO, for Ferrellgas, Inc., et al.
Katherine Marie Loos, Lafayette, for Employers Ins. of Wausau.
Before WOODARD, SULLIVAN and GREMILLION, JJ.
WOODARD, Judge.
Plaintiff appeals trial court's granting of a directed verdict in favor of defendant in this products liability action. We reverse.

FACTS
On October 16, 1992, Russell Bernard, husband of plaintiff Jennifer Bernard (Bernard), died at the Swifty Food Store in Carenco, Louisiana. At the time of the accident, Russell was working at Swifty as a butcher and was responsible for operating the outdoor meat smoker. Two to three times a week, Russell Bernard would load the smoker with meat and light the gas burner under the wood. The smoker was custom-made, that is, it was not mass produced. While there *556 was some discussion at trial as to whether the smoker was considered an indoor or outdoor one, the facts indicate that the smoker was located in a screened area outside the store. It was fueled by propane gas and required manual operation to start the flow of gas and light the burner. The propane delivery system for the smoker was built and installed by the defendant, Ferrellgas. The system consisted of tubing and valves running from the propane tank, through a "T" fitting, to the burner. To light the burner, Russell Bernard had to open two valves, one running from the "T" connector which started the flow of gas (the first valve), and then one closer to the burner to allow the gas into the burner (the second valve). The second valve was close to ground level. Russell Bernard was instructed to open the first valve, but not to open the second valve, until he had lit some kind of a striker to ignite the gas. If both valves were open with no flame to ignite the gas, the propane, being heavier than air, would accumulate in the bottom of the smoker, thereby causing an explosion when ignited.
Apparently, when the smoker was lit, it exploded, causing Russell Bernard to suffer massive head injuries causing instant death. Jennifer Bernard filed suit against Ferrellgas, asserting that the propane delivery system was defective because it did not have a thermocouple or other "safety shut-off" device to reduce the probability of this type of accident. In response, Ferrellgas claimed that Russell Bernard's own negligence in opening both valves was the cause of the injury. A jury trial was held January 10-16, 1996. At the close of Bernard's case, Ferrellgas moved for a directed verdict, contending that Bernard had failed to prove a prima facie case. In particular, Ferrellgas asserted that Bernard failed to show a breach of any legal duty Ferrellgas may have owed to Russell Bernard, or prove that a breach was the legal cause, or cause-in-fact of Russell Bernard's death. The trial court granted the directed verdict. Bernard now appeals this decision.

ASSIGNMENTS OF ERROR
Bernard claims the following assignments of error:
(1) The trial court was clearly wrong in granting Ferrellgas' motion for directed verdict because it was not made at the appropriate time, but rather after Ferrellgas had put on a witness out of turn during Bernard's case in chief and before Ferrellgas rested its case in chief.
(2) The trial court was clearly wrong in granting Ferrellgas' motion for directed verdict because there was substantial evidence of such quality and weight that reasonable and fair minded jurors, in the exercise of impartial judgment, might reach different conclusions.
(3) The trial judge made several erroneous evidentiary rulings which led to a clearly wrong ruling on the motion for directed verdict.
(4) The trial court erred in casting all court costs and expert witness fees against Bernard, in light of the procedural error made by Ferrellgas in moving for a directed verdict at an improper time.

LAW

TIMING OF MOTION FOR DIRECTED VERDICT
In her first assignment of error, Bernard asserts that the trial court was clearly wrong in granting Ferrellgas' motion for a directed verdict because it was not made at the appropriate time, but rather after Ferrellgas had put on a witness out of turn during Bernard's case in chief and before Ferrellgas rested its case in chief. In support of this assertion, Bernard cites Collett v. Branch, 516 So.2d 450 (La.App. 1 Cir.1987), writ denied, 520 So.2d 752 (La.1988) and Blanchard v. Our Lady of the Lake Medical Ctr., 529 So.2d 1309 (La.App. 1 Cir.), writ denied, 532 So.2d 772 (La.1988) for the proposition that:
A motion for a directed verdict may be made either at the close of the plaintiff's case or at the close of all of the evidence, but may not be made at points in between.
Collett, 516 So.2d at 452. In the present case, as in the above cited cases, Ferrellgas was allowed to call a witness, Mr. Cormier, *557 out of turn prior to resting its case-in-chief. We need not address the merits of this assertion, however, because this question is not properly before this court.
It is well-settled law that failure to make formal objections to a ruling of the trial judge results in a waiver of the plaintiff's right to urge those objections as error on appeal. Deville v. Fields, 546 So.2d 332 (La. App. 3 Cir.1989). A review of the record reveals that Bernard had two opportunities to object regarding Cormier's testifying out of turn. The first opportunity was when Ferrellgas moved to call Cormier out of turn. At that time, counsel for Bernard stated: "Yeah, that's okay with me, so we canwe don't have to bring him back." Thus, not only did Bernard fail to object, she affirmatively agreed with calling Cormier out of turn. The second opportunity came when the motion for a directed verdict was made at the close of Bernard's case. Again, Bernard made no objection to the motion on the procedural ground that the motion was untimely. "In the absence of objection, the trial court is afforded no opportunity to prevent or correct the alleged error." Id. at 334 (citing Bertoli v. Flabiano, 116 So.2d 76 (La. App. 1 Cir.1959)). Because there was no objection made at the trial level, the error was not properly reserved, and therefore, this assignment has no merit.

GRANTING OF A DIRECTED VERDICT
In her second assignment of error, Bernard asserts that the trial court was clearly wrong in granting Ferrellgas' motion for a directed verdict because there was substantial evidence of such quality and weight that reasonable and fair minded jurors, in the exercise of impartial judgment, might reach different conclusions. While we find that Bernard's first assignment of error, the procedural argument of improper timing, is not properly before this court, we must nonetheless determine whether the trial court erred substantively in granting the directed verdict. In Cobb v. Kleinpeter, 95-271, p. 5 (La.App. 3 Cir. 10/04/95); 663 So.2d 236, 239, writ denied, 95-2683 (La.1/12/96); 666 So.2d 323, this court held that:
The standard of review for directed verdicts is whether, after viewing the evidence submitted, the appellate court can conclude that reasonable persons could not reach a contrary verdict.
(Citations omitted.) This standard mirrors the standard for granting a summary judgment. Reilly v. Dynamic Exploration, Inc., 571 So.2d 140 (La.1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Where a directed verdict is granted in a jury trial, it is appropriate "only when the evidence overwhelmingly points to one conclusion." Carter v. Western Kraft Paper Mill, 94-524, p. 4 (La.App. 3 Cir. 11/2/94); 649 So.2d 541, 544. This court, in Carter, approved of the federal standard and quoted Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969), in their determination of whether to grant a directed verdict:
[T]he court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion.
Carter, 649 So.2d at 544. After such a viewing of the evidence, the court must then evaluate the propriety of granting a directed verdict "in light of the substantive law underpinning the plaintiff's claims." Id. (citing Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App. 2 Cir.1991)). Thus, in determining whether the trial court erred, this court must analyze the evidence presented through the looking glass of substantive law.
Bernard argues that she has proven a prima facie case under both a theory of negligence and a theory of products liability. Her claim is that Ferrellgas was negligent in not designing the gas supply system with a thermocouple or other safety shut off device. Put another way, she is claiming that Ferrellgas was negligent in manufacturing this product, the gas supply system. Thus, under the pleadings and arguments adduced at trial, Bernard's assertions are more properly analyzed under a theory of products liability, and not negligence.

*558 PRODUCTS LIABILITY
The Louisiana Products Liability Act (LPLA) establishes the exclusive theories of recovery against manufacturers for damage caused by their products. La.R.S. 9:2800.54 reads in pertinent part:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of the manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of the manufacturer or result from a reasonably anticipated alteration or modification of the product.
D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.
Thus, any plaintiff asserting liability for damage caused by a product must prove that: (1) the defendant manufactured the product, (2) the product was unreasonably dangerous for reasonably anticipated use, and (3) the dangerous characteristic of the product existed at the time the product left the manufacturer's control, or was the result of a reasonably anticipated alteration or modification. At trial, Laress Landry, a Ferrellgas employee, testified that he installed the gas supply system and was aware of the availability of alternative safety devices such as pilot lights and automatic shutoff systems. Weston Kilchrist, a former manager at Ferrellgas, also testified that he had knowledge of alternative products, such as pilot lights and automatic shut-off systems. Uncontroverted evidence at trial established that the product was not altered or modified in any way. Thus, Bernard has shown that Ferrellgas manufactured the product, that alternative products existed at the time the gas supply system was manufactured and left Ferrellgas' control, and that the product was not altered or modified in any way. This leaves the court to determine if the second requirement, whether the product is unreasonably dangerous, has been met. La.R.S. 9:2800.56 provides that:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
This section requires a dual showing. First, the plaintiff must show that: (1) an alternative design existed for the product at the time it left the manufacturer's control, and (2) the alternative design was capable of preventing the claimant's damage. However, even if there existed an alternative product capable of preventing the damage, a plaintiff must also meet the second requirement, the so called "risk-utility" analysis, in which the utility of the product is weighed against the risk of harm. We shall analyze these requirements in turn.

EXISTENCE OF AN ALTERNATIVE DESIGN
The first requirement is that there existed an alternative design for the product that was capable of preventing the claimant's *559 damage. It has already been established through testimony that alternative products existed. We must, however, determine whether those products might have prevented Russell Bernard's injuries. A cause of action under the LPLA, while differing from general tort law in some areas, is premised upon tort principles. Bernard is asserting that Ferrellgas was negligent in its design of the gas supply system and that this omission caused Russell Bernard's injuries. If there was no alternative way to make the product safer, Ferrellgas could not have prevented the decedent's injuries and therefore, is not liable.
Another way to answer this question is through a cause-in-fact analysis. "Courts which have evaluated cause in fact ... have applied the `but for' and substantial factor tests alternately and in combination to determine cause in fact." Quick v. Murphy Oil Co., 93-2267, p. 8 (La.App. 4 Cir. 9/20/94); 643 So.2d 1291, 1295, writ denied, 94-2583 (La.1/6/95); 648 So.2d 923. "Conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm." Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280, 1285 (La.1985). The requirement that an alternative design be capable of preventing the injury essentially asks whether Ferrellgas' failure to equip the gas supply system with a pilot light or other safety device was a substantial factor in bringing about Russell Bernard's injuries. That is, whether Russell Bernard's death would have been prevented "but for" Ferrellgas' failure to adopt an alternative design.
In order to determine whether the design of the gas supply system was a substantial factor in Russell Bernard's death, we must discuss the conflicting views on the cause of the accident itself. Ferrellgas contends, and the trial court found, that Russell Bernard opened the two separate valves to the smoker, allowing propane to accumulate, then lit the burner, resulting in the explosion. The trial court further held that this incident was solely caused by Russell Bernard's gross negligence, inattention, and failure to follow his own, and Swifty's, established operating and safety procedures for the smoker. Fire Chief Robert Benoit, the fire investigator for the Lafayette Fire Department, who arrived at the scene of the accident shortly after the explosion, also testified. When asked about the cause of the explosion, Chief Benoit stated that it appeared to have been caused by an ignition of gas which had accumulated inside the smoker. He further stated that the second valve had to be turned on to cause the explosion. He could not say, however, whether or not Russell Bernard actually turned on the second valve.
Elizabeth Champagne, who was present when the accident took place, also testified at trial. She stated that she saw Russell Bernard enter the smokehouse, bend down and exit the smokehouse. He returned to the smokehouse three or four minutes later, bent over again, and the explosion then occurred. Ms. Champagne, however, could not see what Russell Bernard was doing when he bent over, and could not testify as to whether he had opened the second valve before igniting the striker. The trial court found that this evidence established that Russell Bernard opened both valves and then lit the smoker, causing the explosion. In doing so and granting the directed verdict, the trial court ruled that reasonable persons could not have come to a contrary verdict. We disagree.
Under products liability law, the fault or contributory negligence of the claimant is not always dispositive. Indeed, much of the products liability law developed over the years was developed to protect the unknowing consumer from injury caused by events which they, themselves, put into motion. For example, a driver injured in an auto accident may state a cause of action against the manufacturer of the car for failure to include seat belts even though the driver was at fault for the accident. This is so because the lack of seatbelts, while not the cause of the accident, may be a substantial factor in bringing about the injury. In the present case, we must ask whether Russell Bernard would have been injured "but for" the lack of a thermocouple, pilot light or some other safety shut-off switch.
At trial, Dr. David Pesuit, an accident reconstructionist, testified that while no system is fail-safe, a regulator or pilot light would have "vastly reduced" the risks associated *560 with this type of gas supply system. These alternative products are designed to ensure that no gas will enter the burner unless some flame is present to ignite the gas. Thus, were such a device incorporated into a gas supply system such as this, Russell Bernard could not have opened the second valve and allowed the gas to accumulate. In a products liability case, the plaintiff need not prove that an alternative design would have totally prevented the claimant's injuries. Rather, the question is whether the alternative design would have reduced the plaintiff's injuries. Thomas C. Galligan, Jr., The Louisiana Products Liability Act: Making Sense of It All, 49 La.L.Rev. 665 (1989). In the present case, Bernard asserts that even if Russell Bernard opened both valves before lighting the burner, there was testimony that a pilot light or other safety shut-off system would have significantly reduced the chances of an explosion resulting from such inadvertence. Furthermore, Dr. Pesuit testified that, based on the location of the second valve so close to the ground, a person could inadvertently open the valve with his or her foot, causing gas to escape. Further, based on tests of the valve in question, Dr. Pesuit opined that the valve did not need to be completely opened in order for gas to escape. Thus, Bernard has presented a factual scenario with which reasonable persons could agree; namely, that Russell Bernard unknowingly opened the second valve with his foot or lower leg, even slightly, and then lit the accumulated gas. Based upon this evidence we conclude that reasonable jurors could find Ferrellgas' failure to equip the smoker with a safety device was a significant factor in causing Russell Bernard's injuries.

DUTY/RISK
It has already been determined that there existed an alternative design for the gas supply system. We must determine, however, whether the lack of some alternative safety device rendered the product unreasonably dangerous.
A product may be unreasonably dangerous because of its design for one of the following reasons: (1) a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product; (2) although balancing under the risk-utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs and desires with less risk of harm; or (3) although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences.
Home Ins. Co. of Illinois v. National Tea Co., 577 So.2d 65, 73 (La.App. 1 Cir.1990), writs granted, 580 So.2d 364, 365, modified on other grounds, 588 So.2d 361 (La.1991) (citations omitted). When making these determinations, the statute and case law further authorize the court to take into account the effect that any warnings may have on the likelihood of damage.
Like the initial determination as to whether there existed an alternative design capable of preventing the claimant's harm, the second requirement, the so called "risk utility" requirement, is also based on general tort principles. Once the defect in design is found to be the cause-in-fact of the injury, the court must determine whether the manufacturer had a duty to design the product differently. Thus, the "risk utility" test asks whether, based on the alternative designs available, the manufacturer breached its duty of care in adopting the particular design in question. The trial court found that Ferrellgas did not bear any duty to install a thermocouple or any other device under these circumstances. Initially, we note that it is significant that the gas supply system in question is not a mass-produced product. It was designed and manufactured specifically for Swifty's. This fact is important to any "risk utility" analysis because the focus of the analysis is not on an entire line of identical products, but rather on an individual product, i.e. the gas supply system in question.
The first determination to be made is what risk, if any, the product in question created. In assessing this risk, this court may also consider any effect an adequate warning may have had on the likelihood of damage. In the present case, evidence *561 overwhelmingly established that the gas supply system was very dangerous if not used properly. Russell Bernard suffered massive injuries, which led to his immediate death, from the explosion. However, Ferrellgas contends that the product was not unreasonably dangerous when Russell Bernard's knowledge of the risk, and knowledge of warnings as to improper use, are considered. Indeed, were it established that Russell Bernard knowingly opened both valves before lighting the burner, his knowledge as to the risks of this action would be highly dispositive. However, Russell Bernard's knowledge of the risks inherent in the gas supply system is not dispositive in determining whether the product was unreasonably dangerous due to the possible harm from unwittingly opening the second valve. Based on the evidence introduced, a reasonable juror could have found that the gas supply system had a high degree of risk inherent in its use.
The next determination is whether a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. In the present case, Ferrellgas contends that the product was not unreasonably dangerous and that the explosion was caused solely by Russell Bernard's negligence. Ferrellgas further argues that Russell Bernard was well aware of the dangers of the system and, in fact, had trained others on its safe use. Russell Bernard's deliberate opening of both valves, however, was not the only possible cause of this accident. As was shown above, Dr. Pesuit testified that the second valve was close to the ground and could have been inadvertently opened by someone's foot, allowing gas to escape. Based upon this testimony, we find that a reasonable juror could reach a contrary verdict.
Ferrellgas further urges that the alternative designs proposed by Bernard would not lessen the risk of harm. In particular, Ferrellgas contends that installing a pilot light would simply substitute one danger for another. Because the smoker is outside, there is a chance that wind or other types of weather could extinguish the pilot light, causing gas to escape. Furthermore, Ferrellgas contends, and the evidence shows, that no such devices are used on outdoor smokers such as this. It argues that to find this product defective will be to impose a duty to install regulators or pilot lights on every manufacturer of a propane fueled cooker in Louisiana.
Our holding today, however, does nothing of the sort. First, our holding is in no way to be construed as an opinion on what we believe the outcome of this case should be. We are simply holding that enough evidence exists to defeat a motion for a directed verdict. Whether Ferrellgas was, in fact, negligent is a question that is not presently before this court. Our inquiry is whether reasonable jurors could have come to a contrary verdict. Second, as stated earlier, the gas supply system in this case is not a mass-produced product, but was custom-made, specifically for Swifty's. Unlike product's liability cases involving thousands of identical products, this case only deals with an individual product. Thus, we do not find that propane gas supply systems, in general, are unreasonably dangerous. We do, however, find that questions exist as to the dangers associated with this particular system, the location of these particular valves, and the possible need for some safety device to lessen these dangers. For these reasons, the judgment of the trial court is reversed, and this case is remanded for further proceedings. Because this holding resolves the issues before us, we need not address Bernard's remaining assignments of error.

CONCLUSION
The judgment of the trial court is reversed, and this case is remanded. Costs of this appeal are to be determined upon outcome of the trial.
REVERSED AND REMANDED.
SULLIVAN, J., concurs.