598 So.2d 1304 (1992)
Marshall DAIGLE, Plaintiff-Appellant,
v.
AUDI OF AMERICA, INC., et al., Defendants-Appellees.
No. 90-1254.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
Lundy & Dwight, Clayton A. Davis, Lake Charles, for plaintiff-appellant.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Winn, Joy Braun, New Orleans, for Volkswagen.
R. Wm. Collings, Lake Charles, for So. City.
Martin Radvan, New York City, for Audi.
Before GUIDRY and STOKER, JJ., and PATIN[*], J. Pro Tem.
*1305 JOHN A. PATIN, Judge Pro Tem.
This is a products liability case. The appellant, Marshall Daigle alleges that the 1979 Audi car, manufactured by appellee, Audi of America, Inc., a subsidiary of Volkswagen of America, Inc., which injured his hand was unreasonably dangerous in design within the meaning of the Louisiana Products Liability Act, La.R.S. 9:2800.51, et seq. Daigle appeals from the trial court's dismissal of his case on Audi's motion for dismissal at the close of his case.
The record discloses the following facts:
On June 21, 1989, Daigle, accompanied by his friend, Bucky LeBlanc, was shopping for a used car. One of the cars he looked at was a 1979 Audi. Dana Jackson, a salesman, showed the Audi to Daigle. Jackson started the Audi and Daigle said "pop the hood". Daigle's undisputed testimony established that he saw the hood "pop". While Jackson was getting out of the Audi to raise the hood, but before he could do so, he saw Daigle walk toward the front of the Audi and then saw him "go down" below the hoodline. LeBlanc saw Daigle kneel down. Daigle made a "very quick, extremely rapid", attempt to open the hood where most secondary hood latches areinside of and behind the front of the hood. Daigle did not locate the secondary hood latch release. Then, allegedly because he had knowledge of other vehicles with secondary hood latch releases located in either the area of the bumper or the grill, Daigle either bent over or went down on one knee, and without making any visible reconnoiter, stuck his hand at least an inch or an inch and a half beyond the flare, without knowing where he was reaching and with the engine running. In regard to this sequence of events the trial judge commented "As a matter of fact, it was so quick, I don't know how he could have looked for the latch where it should have been, and also gotten down there, and proceeded to make the movements he did". Daigle's fingers were caught in the belt pulley, injuring his hand. LeBlanc and/or Jackson heard Daigle say, "cut off the engine". The engine was turned off and Daigle was taken to the hospital for treatment. This lawsuit ensued.
This was a bench trial. At the close of Daigle's case, the trial court granted Audi's motion to dismiss. The trial judge concluded that the Audi car "was being used in a fashion not reasonably anticipated by the manufacturer". Daigle appeals this ruling arguing that foreseeability in a products liability case is determined by considering whether the injury could have reasonably been anticipated, citing Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), and that his injury was foreseeable.
Daigle's accident with the Audi car occurred on June 21, 1989 and he filed suit on September 6, 1989. The Louisiana Products Liability Act, La.R.S. 9:2800.51 et seq. (hereinafter LPLA) became effective September 1, 1988 and thus is applicable to the case.
The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products". La. R.S. 9:2800.52. This statement is re-emphasized by the next sentence of the same statute:
A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this chapter.
La.R.S. 9:2800.54, provides:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if: ...
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
. . . . .
C. ... The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 ... must exist at the time the product left the control of *1306 its manufacturer or result from a reasonably anticipated alteration or modification of the product.
D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.
La.R.S. 9:2800.56 (1991), provides:
A product is unreasonably dangerous in design, if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
Both Daigle and the trial court refer to Audi's motion to dismiss as a motion for directed verdict. Since the case was tried to the court and not a jury, Audi's motion was a motion for involuntary dismissal rather than a motion for directed verdict.
La.Code Civ.P. art. 1810, provides:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
Comment (b) adds:
Paragraph B of former Art. 1810 does not belong in the section dealing with jury trials and it has been moved to Art. 1672 which governs involuntary dismissals.
La.Code Civ.P. art. 1672, provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979), after noting that the source of then La.C.P. art. 1810A was the Federal Rules of Civil Procedure, we stated:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
Citing Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969). Also see Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986).
In contrast, as stated in Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir. 1991), the standard to be used in determining whether to grant a motion for involuntary dismissal: *1307 ... requires a judge to evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion.
Citing Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2d Cir.1988).
We now examine the underlying basis for the trial court's dismissal of Daigle's case under the LPLA.
As stated supra, La.R.S. 9:2800.54 (1991) provides:
The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product ... (Emphasis added)
As required by La.R.S. 9:2800.54, an essential element to a claimants case is the establishment that his damage arose from "a reasonably anticipated use" of the product.
La.R.S. 9:2800.53(7) defines "reasonably anticipated use" as:
... a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.
This definition is narrower in scope than its pre-LPLA counterpart, "normal use", which included "all reasonably foreseeable uses and misuses of the product. Walker v. Babcock Industries, Inc., 582 So.2d 258 (La.App. 1st Cir.1991), citing Bloxom v. Bloxom, 512 So.2d 839, 841 (La.1987) for the definition of "normal use," and Kennedy. A Primer on the Louisiana Products Liability Act, 49 La.L.Rev. 565 (1989), for the narrower scope of LPLA "reasonably anticipated use."
John Kennedy, the author of the law review article cited in Walker, along with Professor H. Alston Johnson, III, drafted the LPLA and worked for its passage as special counsel to Governor Roemer. Kennedy's law review article also states:
The standard for determining a reasonably anticipated use, therefore, is objective (an ordinary person in the same or similar circumstances) and, like "normal use," what constitutes a reasonably anticipated use is to be ascertained from the point of view of the manufacturer at the time of manufacture. "Reasonably anticipated use," however, should prove to be superior to "normal use" in discouraging the fact-finder from using hindsight because of the words "reasonably anticipated."
"Reasonably anticipated use" will also be more effective than "normal use" in conveying the important message that the manufacturer is not responsible for accounting for every conceivable foreseeable use. It is foreseeable that a consumer might use a soft drink bottle for a hammer, might attempt to drive his automobile across water or might pour perfume on a candle to scent it. If he does, however, the manufacturer of the product should not be and under the LPLA is not liable because the uses in the illustrations are not the sort that a manufacturer should reasonably expect of an ordinary consumer.
In his written reasons for judgment the trial judge explains the basis for granting Audi's motion to dismiss:
The court concludes that the product was being used in a fashion not reasonably anticipated by the manufacturer. In this instance, the manufacturer did not ... or does not have to anticipate, in the normal use of handling of its product, that a person will stick his fingers beyond the flair of the front of the vehicle, without making a visible reconnoiter of what is there. Especially is this true when the engine is running.
After reviewing the record in its entirety, we find the trial courts dismissal in keeping with both the text and the policy underlying the LPLA. We find no error in the ruling.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] Judge John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.