629 So.2d 425 (1993)
HIMEL MARINE, INC., Plaintiff-Appellee,
v.
Lorraine BRAQUET, et al., Defendants,
Gilman Braquet, Defendant-Appellant.
No. 93-456.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
Writ Denied February 25, 1994.
*426 William Allen Repaske, New Iberia, for Himel Marine.
Madeline Lee, Alexandria, for Gilman Braquet, Jr., et al.
Edwin Sebastian Patout, New Iberia, for Transcontinental Ins.
Before DOUCET, YELVERTON and WOODARD, JJ.
YELVERTON, Judge.
Himel Marine, Inc., the owner of two boats, and Transcontinental Insurance Company, the insurer of those boats, sued Gilman Braquet, Jr., for damages to the boats when Braquet's sugarcane derrick collapsed while the derrick was off-loading one of the boats from a highway transport vehicle. A jury found Braquet not liable. The trial judge granted a judgment notwithstanding the verdict, awarding damages of $25,667.58 to Transcontinental, and $1,000, representing the insurance policy deductible, to Himel Marine. Braquet appealed. We affirm.

BACKGROUND AND PROCEDURAL FACTS
Himel Marine, Inc., a boat dealer in Iberia Parish, bought some boats and they were delivered by a boat transport vehicle. Gilman Braquet was in the business of off-loading boats and had converted a sugarcane derrick, or loader, for that use. Himel Marine routinely used Braquet and his cane loader for off-loading boats. On April 24, 1989, Braquet was in the process of using his cane derrick to off-load a Grady White 280 Marlin boat from the transport vehicle to Himel Marine's trailer. The 280 Marlin weighed about 7,000 pounds. When the boat was hoisted about two feet above its resting place on the transporter, the cane derrick collapsed and the boat fell back on the transporter, hitting a second boat and damaging both.
Braquet testified that the reason the derrick failed was because the guy line holding it in the cement in the ground pulled completely out. He could not explain why the guy line pulled out but he admitted that the metal rod in the guy line was rusted part way through.
The case was tried by a jury. The jury found that Braquet had custody of the crane (the sugar cane derrick), but that the crane did not have a defect that caused damage to the boats, and that Braquet did not engage in substandard conduct that caused damage to the boats. In accordance with the jury verdict a judgment was signed dismissing the suit.
Himel Marine and Transcontinental moved for a judgment notwithstanding the verdict. The trial judge granted a JNOV.

THE APPEAL
Braquet assigns three errors on appeal. The first is that the trial court was in error in granting a JNOV in favor of the plaintiffs. The second and third assignments contend that the trial court erred in excluding testimony that would have gone to show that there was an oral indemnity agreement entered into several years earlier between Himel Marine and Gilman Braquet, Sr., now deceased. We will discuss these issues and the reasons for our judgment under the headings "JNOV" and "Evidence of Oral Indemnity Agreements".

JNOV
In our appellate review of the granting of a motion for a JNOV, we have to ask the same question the trial judge asks in deciding whether or not to grant the motion. The question is: do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is yes, then the trial judge was correct in granting the *427 motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La. 1991).
One of the grounds of liability which plaintiffs alleged in this case was strict liability, La.Civ.Code art. 2317, as to which the jury was properly instructed. Although the jury found that Braquet, Jr. had custody of the cane derrick, it found that the derrick did not have a defect that caused damage to the boats.
For a plaintiff to recover under La.Civil Code art. 2317, he must prove that: 1) the thing which caused damages was in the care, custody and control of defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by the defect. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). The first element, legal fault, contemplates that rather than the loss falling upon some innocent third person, the loss resulting from the creation of the risk falls upon the person to whom society allots its care, custody or control. The second element of a vice or defect which creates an unreasonable risk of harm symbolizes the judicial process of deciding which risks are encompassed by the codal obligations from the standpoint of justice and social utility. The third element is the causal relationship between the defect which poses an unreasonable risk of harm and the resulting damages. Sistler, 558 So.2d at 1112-1113.
Upon proof of all three elements of strict liability, the owner is responsible for the damages unless he proves the damages were caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Sistler, 558 So.2d at 1113.
There was not much testimony in this case and the essential facts are simple and undisputed as to what happened. Braquet knew that the weight of the boat was about 7,000 pounds. He testified that the cable that lifted the boat could support at least 65,000 pounds. Boats heavier than the 280 Marlin had been lifted many times. The boat was level and did not swing as it was being lifted. There was no dispute that the guy line came out of the cement in the ground and that this caused the cane derrick to collapse. This in turn caused the boat being lifted to fall and be damaged and damage the boat on which it fell. Braquet admitted that the rod in the guy line was partly rusted through. No other evidence was offered as the reason the cane derrick collapsed.
The cane derrick was in the care, custody and control of Braquet. No one disputes this jury finding. The jury found no negligence on the part of the operator of the cane derrick, and so it is established that the way in which the cane derrick was being operated played no part as a possible cause of the accident. The relatively light weight of the boat eliminates weight as a possible cause responsible for the ripping out of the guy line. This leaves nothing except a defect or vice in the guy wire as the cause of the accident. The guy wire was embedded in a steel plate in a block of concrete in the ground. It simply tore loose. Braquet admitted it was rusted half through. Although there was no expert testimony establishing this as the cause of the accident, no other reasonable explanation exists than that the guy wire was defective. A defect may be inferred from the circumstances of the accident. Brown v. Sears, Roebuck and Co., 514 So.2d 439 (La.1987). The inference of a defect in this case is so strong and overwhelming that reasonable people could not arrive at a different conclusion. The trial judge did not commit manifest error in granting the

JNOV.

EVIDENCE OF ORAL INDEMNITY AGREEMENTS
Braquet sought to prove an oral contract of indemnity with Himel Marine for all losses or damage. Braquet claimed that this contract was entered into several years earlier between Himel Marine and Braquet's now deceased father. Himel Marine denied that such a contract had ever existed. Braquet wanted to introduce testimony that other boat dealers had similar oral contracts with Himel Marine. The trial judge excluded that *428 testimony as irrelevant. Braquet also wanted to introduce testimony of persons who formerly worked for Himel Marine and who were present when the supposed oral agreement was made. The trial judge refused to admit that testimony as inadmissible hearsay. Braquet put all this testimony in the record as a proffer. On this appeal, Braquet argues that the exclusion of this evidence was error.
We have read the proffered testimony. The proffer of Edward Dauterive, another boat dealer, was that the Braquets agreed to unload his boats providing they would not be responsible in any way for losses or damage. Tim Boutte, a former employee of Himel Marine, stated that he was present helping unload Himel Marine's boats for several years and that on one occasion, when he was learning to tie the bowline knots, Braquet, Jr., came over and told him that if something would happen he (Braquet) would not be responsible. William Hulin, another former Himel Marine employee, stated that Braquet, Jr., taught him how to tie the boats up so they wouldn't have an accident, "... and if we would have had an accident, he said it would be our responsibility because we were tieing the boats."
We need not address whether this testimony was admissible because we conclude that even if it is considered, it falls far short of proving an oral contract of indemnity.
Contracts of indemnity to protect a person from his own negligence are subject to the rule of strict construction. Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986). There is a presumption against the intention to make such indemnification if such an intention is not unequivocally expressed. Id. However, there is no presumption of contractual intention in the instance of a doubtful provision regarding indemnity against strict liability under La.Civil Code art. 2317. If the common intention of the parties as to strict liability in construing a contract of indemnity is in doubt, the general rules which govern the interpretation of other contracts must be employed to determine intent. Id. After the application of such general interpretative rules, if the common intention of the parties as to strict liability remains in doubt, a court must interpret the contract further in light of everything that, by law, custom, usages, or equity, is considered as incidental to the particular contract or necessary to carry it into effect. Id.
A party asserting the existence of a contract has the burden of proving that there was a contract. In this case that burden was on Braquet. Even if we give Braquet the full benefit of the testimony above described, he has failed to establish the existence of a verbal contract of indemnity whereby it was the common intent of the parties that he be indemnified for his own strict liability. That Braquet had a contract of indemnity with one other boat dealer did not establish custom or usage. The remaining proffered testimony indicated merely that there might have been an agreement that Himel Marine would bear any loss resulting from the failure of its own employees to properly tie the bowline. Braquet, Jr., testified only that his deceased father entered into an agreement with Himel Marine. Himel Marine denied that. Considering all of the evidence on the subject of a verbal contract of indemnity, we find that Braquet's proof falls far short of establishing the existence of such a contract.
For these reasons, the judgment of the trial court is affirmed at appellant's costs.
These are two consolidated cases. The above reasons for judgment apply to both. A separate judgment is this date being handed down in the other case. Transcontinental Insurance Co. v. Gilman Braquet, Jr., 629 So.2d 429 (La.App. 3d Cir.1993).
AFFIRMED.