**Ralph KAMPEN; Katherine Kampen, Plaintiffs–Appellants,**

v.

**AMERICAN ISUZU MOTORS, INC., Defendant–Appellee.**

No. 96–30544.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1997.

B. Gerald Weeks, New Orleans, LA, for Plaintiffs–Appellants.

Keith W. McDaniel, Lance B. Williams, Pulaski, Gieger & Laborde, New Orleans, LA, for Defendant–Appellee.

Before DUHÉ, BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Ralph and Katherine Kampen brought this diversity suit against American Isuzu Motors ("Isuzu") under the Louisiana Products Liability Act of 1988, LA.REV.STAT. ANN. §§ 9:2800.51–.59 (West 1991) ("LPLA" or "the Act"). The Kampens claim that Mr. Kampen was injured when an Isuzu factory-supplied tire jack collapsed, dropping the car it had been supporting on his shoulders.

Isuzu moved for summary judgment on two elements of the Kampens' products liability claims. First, Isuzu asserted that there was no evidence that the jack was unreasonably dangerous. Second, Isuzu claimed that Kampen's use of the product was not a "reasonably anticipated use." The district court granted summary judgment in favor of Isuzu on the ground that Kampen's use of the tire jack was not a "reasonably anticipated use" within the meaning of the LPLA. We affirm in part and reverse in part.

I.

The basic facts are straightforward. Kampen's daughter noticed a noise coming from underneath her 1989 Isuzu Impulse. Kampen agreed to investigate. He used the car's factory-provided jack to raise the car's front end on the driver's side. Viewing the evidence in the light most favorable to Kampen, he jacked up the car in a manner consistent with the instructions given in the owner's manual. He placed the automatic transmission in park, blocked the opposite tire, and placed the jack in a special notch between the door opening and the wheel. Suspecting that something was caught behind the front wheel on the driver's side, he placed his head and shoulders beneath the front of the car to examine the back of the wheel. The jack collapsed, and the car fell across his shoulders, breaking both of his collarbones.

The Kampens' expert identified the jack's "failure mode" as a "shearing of the [metal] teeth which are at the base of the bottom set of legs for the scissors jack" in combination with "the dimensions of the contacting surfaces." The expert testified that the steel was "soft on this jack, real soft ... about as soft as you can get."

The owner's manual and the spare-tire compartment warned jack users not to place themselves beneath a car supported solely by the jack. Kampen's deposition testimony indicated he did not read the owner's manual before jacking up the car.

II.

We review the district court's grant of a summary judgment de novo, applying the same standard as the district court. Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir.1992). We review the evidence in the light most favorable to the nonmovant. Exxon Corp. v. Burglin, 4 F.3d 1294, 1297 (5th Cir.1993).

The Kampens brought this suit against Isuzu under the Louisiana Products Liability Act. Under the Act, a claimant can prove that a product was unreasonably dangerous in four different ways: (1) design; (2) construction or composition; (3) inadequate warning; or (4) nonconformity to express warranty. LA.REV.STAT. ANN. § 9:2800.55–.58. These are the "exclusive theories of liability for manufacturers for damage caused by their products" under Louisiana law. *Id.* § 9:2800.52. The Kampens' complaint alleges that the jack was unreasonably dangerous in design, in construction or composition, and because of an inadequate warning.

Section 2800.54 of the LPLA contains the basic elements of a products liability cause of action against a manufacturer in Louisiana:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

LA.REV.STAT. ANN. § 9:2800.54(A)(emphasis added). Thus, under the statutory scheme, the plaintiff must prove both (1) that the use to which the plaintiff put the product was "reasonably anticipated" and (2) that his damages were proximately caused by an unreasonably dangerous characteristic of the product. *See id.*

### III.

### Reasonably Anticipated Use

### A.

■ The district court concluded that Mr. Kampen's use of the jack was not reasonably anticipated. The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA.REV.STAT. ANN. § 9:2800.53(7). Whether a particular use of a product is "reasonably anticipated" is an objective inquiry, undertaken from the manufacturer's point of view at the time of manufacture. *See Lockart v. Kobe Steel Ltd. Constr. Mach. Div.*, 989 F.2d

864, 867 (5th Cir.1993). The factfinder must determine how the manufacturer should have reasonably expected ordinary people would use its product. *See* LA.REV.STAT. ANN. § 2800.53(7); *see also* John Kennedy, *A Primer on the Louisiana Products Liability Act*, LA. L. REV. 565, 586 (1986), *quoted in Myers v. American Seating Co.*, 637 So.2d 771, 774 (La.App.1994).

■ Before the LPLA became effective in September 1988, a products liability claimant had to show that "his damage resulted from a condition of the product that made it unreasonably dangerous to *normal use.*" *Bloxom v. Bloxom*, 512 So.2d 839, 843 (La.1987) (emphasis added) (citations omitted). "Normal use" included "all intended uses, as well as all foreseeable uses and misuses of the product." *Id.* (citations omitted). The Louisiana legislature replaced the "normal use" test with the LPLA's "reasonably anticipated use" requirement. The legislature apparently intended the new "reasonably anticipated use" standard to be narrower in scope than the "normal use" standard it replaced. *See Dunne v. Wal–Mart Stores, Inc.*, 679 So.2d 1034, 1037 (La.App.1996); *Myers*, 637 So.2d at 775 (citations omitted); *Daigle v. Audi*, 598 So.2d 1304, 1307 (La.App.1992); *Walker v. Babcock Indus., Inc.*, 582 So.2d 258, 259 (La.App.1991). The parameters of the reasonably anticipated use test nevertheless remain imprecise.

The Louisiana courts have frequently defined "reasonably anticipated use" in terms of what it is not, contrasting a reasonably anticipated use with one that is merely "conceivable." *See Myers*, 637 So.2d at 779 ("Although this use may be a conceivable use, it is not a reasonably anticipated use."); *Delphen v. Department of Transp. & Dev.*, 657 So.2d 328, 333 (La.App.1995) ("The more restrictive scope of liability [under the reasonably anticipated use standard] was meant to avoid prior confusion because virtually any conceivable use is foreseeable.") (citation omitted). As one of the LPLA's drafters explained: " 'Reasonably anticipated use' . . . convey[s] the important message that the manufacturer is not responsible for accounting for every conceivable foreseeable use." Kennedy, supra at 586. The following are

examples of uses that are conceivably foreseeable, but not "reasonably anticipated": "... a consumer might use a soft drink bottle for a hammer, might attempt to drive his automobile across water or might pour perfume on a candle to scent it." *Id.*

### B.

■ Both the language of the LPLA and the cases that have interpreted "reasonably anticipated use" suggest that the statute is aimed principally at the manner in or method by which the claimant operated or handled the product. The statute defines "reasonably anticipated use" in terms of the "use or *handling*" of a product. LA.REV.STAT. ANN. § 9:2800.53(7)(emphasis added); *see also Lockart,* 989 F.2d at 868 (the use of the excavator was hanging a pontoon from the bucket of an excavator with a chain); *Myers,* 637 So.2d at 779 (the use of the folding chair was standing on the back instead of the front portion of the seat); *Delphen* (the use was riding the tire with the front end loose).[1] Yet in some cases "use" may also encompass the purpose for which the product is used.[2] For example, if a consumer uses a soda bottle as a hammer, both the manner of use (hitting the bottle against a surface) and the purpose of use (to flatten or nail something) are not reasonably anticipated.

■ Viewing the summary judgment evidence in the light most favorable to Kampen, the manner in which he used the jack was one that Isuzu should have reasonably expected. He properly placed the jack, there was nothing unusual about how he operated the jack, and he even blocked the opposite wheel as suggested in the owner's manual.[3] Isuzu should also have reasonably anticipated the purpose for which Kampen used the jack: to jack up the car with which it was provided.

Kampen did not use the jack for a conceivably "foreseeable, yet bizarre" purpose, such as elevating a house's foundation or jacking up a semi-truck. *Hunter v. Knoll Rig & Equipment Manufacturing Co.,* 70 F.3d 803, 812 (5th Cir.1995) (Benavides, J., dissenting), *reh'g denied with per curiam opinion,* 80 F.3d 136 (5th Cir.1996).

■■ Isuzu contends, however, that "getting under the car" was part of the "use" of the jack. We disagree. In our view, Kampen's "use" of the jack was complete when he jacked up the car. Not every action taken in connection with the product is a "use" of the product. Placing oneself in the zone of danger created by a product is different from "using" the product. For example, in *Lockart,* the "use" that the court found was not reasonably anticipated was hanging a steel pontoon by the teeth of an excavator bucket, not getting under the suspended pontoon. *Lockart,* 989 F.2d at 868. Here, getting under the car while it was elevated by the jack was not a "use" of the jack within the meaning the statute any more than a hat that is blown under the car "uses" the jack or a child "uses" the jack by wandering underneath the car.

■ "Use" includes both the manner in which a product is handled and the purpose for which the product is used to the extent that the purpose affects the manner in which the product is handled. Limiting the scope of use in this way is consistent with the apparent purpose of the reasonably anticipated use requirement: "to express the types of product uses and misuses by a consumer that a manufacturer must take into account when he designs a product, drafts instructions for its use and provides warnings about the product's dangers in order that the product not be unreasonably dangerous." Kennedy, *supra* at 584. In every case in which the

1. Dictionaries define "use" primarily in terms of the manner in which or the method by which something is used. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1299 (1984) ("the act or practice of employing something ... [;] the fact or state of being used ... [;] a method or manner of employing or applying something ....") (first set of definitions).

2. Another dictionary combines the concepts of manner and purpose, defining use as "[t]he act

of using; the application or employment of something *for some purpose.*" THE AMERICAN HERITAGE DICTIONARY 1331 (2d Coll. Ed.1985).

3. Although Isuzu presented some evidence that Kampen used the jack on an uneven surface, Kampen's expert testified that the physical evidence suggested that the base of the jack was "flat or relatively flat" when it collapsed.

courts have found that a use was not reasonably anticipated, the manufacturer would have had to do something to make the product safe (or, more precisely, not unreasonably dangerous) for the unanticipated use that would have been unnecessary to make the product safe for a reasonably anticipated use.[4] In other words, the way in which the claimant used the product caused the product to exhibit a weakness or defect that would not have manifested itself had the product been used in the manner or for the purpose the manufacturer could reasonably expect. In this case, the use to which Kampen put the jack did not create a defect that would not have otherwise existed. That is, the fact that he was under the car did not make the failure any more or less likely to occur. The risk that Isuzu was required to take into account in designing, manufacturing, and warning about the jack was that the jack would collapse under the weight of a vehicle it was designed to lift.

Moreover, even if getting under the car was a "use" of the jack, we are unwilling to hold that, as a matter of law, the manufacturer should not have reasonably expected a user to place part of his or her body beneath a jacked up car.

■ The district court viewed the "sole issue ... [to be] whether, viewed in the light of ... [Isuzu's adequate] cautions, placing one's body beneath a car supported only by the jack is reasonable behavior." 923 F.Supp. at 111. This is incorrect. The "reasonable" in the phrase "reasonably anticipated use" does not refer to the plaintiff's behavior, but rather to the manufacturer's anticipation. That the plaintiff's behavior is unreasonable does not necessarily mean that the manufacturer should not have reasonably anticipated it. No doubt there may be overlap between unreasonable uses of a product and uses of a product that the manufacturer should not reasonably anticipate. And, a use may be so

unreasonable or the danger from such a use so obvious that, as a matter of law, no manufacturer would reasonably anticipate the use. See, e.g., Hunter, 80 F.3d at 137 (per curiam denial of rehearing); Lockart, 989 F.2d at 868. But unreasonable use and use that is not reasonably anticipated are not coterminous. "Reasonably anticipated use" is use that a manufacturer "should reasonably expect of an *ordinary person* in the same or similar circumstances." La.Rev.Stat. Ann. § 9:2800.53(7) (emphasis added).

■ Under Louisiana law, the unreasonableness of the plaintiff's conduct is taken into account by a system of comparative fault. See Bell v. Jet Wheel Blast, Div. of Ervin Indus., 462 So.2d 166 (La.1985); Thomas C. Galligan, *The Louisiana Products Liability Act: Making Sense of It All*, 49 La. L. Rev. 629, 685 (1989) (stating "the obvious": "that the [LPLA] makes no change in Louisiana's comparative fault law"). The claimant's comparative fault provides the manufacturer with an affirmative defense that may well reduce the claimant's recovery. But if a product is unreasonably dangerous in a use that the manufacturer could reasonably anticipate, the fact that the claimant has put himself or herself in the zone of danger created by that defective product should not bar the claimant's recovery. Cf. Terrebonne v. Goodman Mfg. Corp., 687 So.2d 124 (La. App.1996). Applying the reasonably anticipated use element to preclude recovery by a negligent plaintiff would "inject" a contributory negligence bar "through the back door." See Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La.1988) (quoting Murray v. Ramada Inn, Inc., 821 F.2d 272 (5th Cir.1987)) (internal quotation marks omitted).

If the Louisiana legislature had intended the reasonably anticipated use requirement to function as a contributory negligence bar, it could have said so. The LPLA's definition

---

**4.** For example, in *Myers v. American Seating Co.*, a Louisiana court of appeals held that a manufacturer could not have reasonably anticipated that someone would stand on the rear portion of a folding chair's seat, causing the chair to jackknife. The court explained: "The evidence shows that, in a reasonably anticipated use, the [folding chair] performed in a manner a folding chair should perform. Only when used in the manner [the plaintiff] used the chair, namely standing on the rear portion of the chair seat, would the chair jackknife." *Myers*, 637 So.2d at 779.

of "adequate warning" suggests that the Louisiana legislature did not consider "ordinary" to be synonymous with "reasonable": unlike the definition of reasonably anticipated use, which refers to an "ordinary person," *see* LA.REV.STAT. ANN. § 9:2800.53(7), the definition of "adequate warning" speaks of an "ordinary *reasonable* user." *See id.* § 9:2800.53(9) (emphasis added).

▮ Moreover, the Supreme Court of Louisiana has recognized that it can be reasonably expected that ordinary people will sometimes act without reasonable care. *See Levi v. Southwest La. Elec. Membership Co-op.*, 542 So.2d 1081, 1086 (La.1989) (explaining that a power company's placement of electrical lines "may demand precautions against 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated' ")(citing *Murphy v. Great Northern Ry. Co.*, 2 Ir. Rep. 301 (1897); other citations omitted). The issue under the LPLA is not whether the claimant engaged in a reasonable use of the product, but rather whether the manufacturer should have reasonably anticipated that an ordinary person would use the product in a particular manner. Even if Kampen acted negligently in getting under the car, his use of the jack to lift the car was still a reasonably anticipated use.

▮ In support of its conclusion that Kampen's use was not reasonably anticipated, the district court relied on two warnings given by Isuzu, one in the owner's manual and the other on the vehicle's spare-tire compartment, which cautioned jack users not to "get beneath the vehicle."

This court in *Lockart* extensively discussed an instruction in the operator's manual for an excavator, which warned not to use the teeth of the excavator's bucket to lift anything. In that case, two workers suspended a steel pontoon from the teeth of the excavator's bucket with chains and got underneath the pontoon to work on it. 989 F.2d at 865. The chains slipped, and the pontoon fell, killing one man and injuring the other. *Id.* The *Lockart* plaintiffs argued that the presence of the warning indicated that the manufacturer reasonably anticipated that people would use the teeth of the excavator's bucket as a sus-

pension device. We rejected that argument, noting:

> When a manufacturer expressly warns against using the product in a certain way in clear and direct language accompanied by an easy to understand pictogram, it is expected that an ordinary consumer would not use the product in contravention of the express warning.

*Id.* at 989.

Although this statement is strong medicine, it does not control the outcome of this case for several reasons. First, unlike the instruction in *Lockart*, the warning in this case did not warn against a manner of using the product or instruct how the product could be used safely, but rather warned how the damage that might result from the jack's failure could be minimized. Second, the *Lockart* court recognized that the warning would not establish that a use was not reasonably anticipated if ". . . despite the warnings, [the manufacturer] should have been aware that operators were using the excavator in contravention of certain warnings." *Lockart*, 989 F.2d at 868. In this case, Isuzu should have been aware that jack users would place parts of their bodies under the car notwithstanding a warning not to do so. Finally, the court in *Hunter v. Knoll Rig*, suggested that the presence of the warning was not necessary to the outcome in *Lockart*. 70 F.3d at 806. Instead, the court insisted that the *Lockart* decision turned on the obviousness of the danger to both ordinary and experienced users. *Id.*

*Lockart* established that instructions are relevant to whether the claimant was using the product in a reasonably anticipated manner. But to hold that warnings are always dispositive of the reasonably anticipated use issue would be nonsensical and fundamentally inconsistent with the LPLA. The process established for evaluating unreasonably dangerous design under the LPLA demonstrates that the Louisiana legislature did not intend the presence of warnings to be dispositive of the reasonably anticipated use inquiry. Under the LPLA balancing test for determining whether a product has an "unreasonably dangerous design," the factfinder must "consid-

er" "[a]n adequate warning about a product ... in evaluating the likelihood of damage." LA.REV.STAT. ANN. § 2800.56(2). If any warned-against use were *per se* not a reasonably anticipated one, then this portion of the unreasonably dangerous design provision would be superfluous. *See Sutton v. United States,* 819 F.2d 1289, 1294 n. 9 (5th Cir.1987)(holding that a statutory provision should not be construed to render another provision superfluous).

Moreover, a *per se* rule that any warned-against use is not reasonably anticipated could produce harsh and unintended results. Such a rule would allow a manufacturer to insulate itself from liability for uses of a defective product that are unquestionably reasonably anticipated. Consider, for example, a manufacturer that refuses to place an inexpensive guard on a radial saw to prevent severe hand injuries. Instead, the manufacturer warns the user against placing his or her hands under the rotating blade of the saw. Is the use of the saw by a home improvement buff who slices off a finger any less reasonably anticipated because the manufacturer may have warned against placing one's hands under the saw? The manufacturer cannot so easily transform a reasonably anticipated use of a defective product into a use that is not reasonably anticipated.[5] We conclude that in this case, the presence of a warning not to get under the car could not transform Kampen's otherwise reasonably anticipated use into a use that could not have been reasonably anticipated.

Isuzu also attempts to rely on the fact that Kampen worked as a mechanic for several years. This court in *Lockart* noted the expertise or sophistication of the user in discussing whether the use of a pontoon as a

suspension device was reasonably anticipated. *See* 989 F.2d at 868. In *Lockart,* however, the product was designed for use by experienced operators: the ordinary user of bulldozing equipment is familiar with heavy equipment. Not so with a tire jack: the ordinary user of a tire jack is anyone who drives a car. Isuzu could reasonably anticipate that an ordinary person using a tire jack might place some part of his or her body under the elevated vehicle.[6] Moreover, the *Lockart* court's reliance on the expertise of the users in that case was dictum. The *Lockart* court recognized that the Louisiana statute requires an examination of what the manufacturer should expect of an "ordinary person in the same or similar circumstances." *Lockart,* 989 F.2d at 868. The court concluded that "the dangers of using the bucket to suspend a heavy pontoon should have been obvious to the ordinary consumer and certainly to experienced workers." *Id.* Finally, even if the expertise of the individual plaintiff has some bearing on reasonably anticipated use, there is no reason to suspect that an experienced mechanic would not use a tire jack to investigate the underside of his personal automobile.

We conclude that the summary judgment evidence presents a question for the jury regarding whether Kampen's use of the jack was reasonably anticipated. Consequently, summary judgment on the basis of the reasonable anticipation element was improper.

## IV.

### Unreasonable Dangerousness

Isuzu also moved for summary judgment on the ground that there was no issue of fact on the element of "unreasonable dangerousness."[7] The district court did not

---

5. Cf. Robert S. Adler, *Redesigning People Versus Redesigning Products,* 11 J.L. & Pol. 79, 119 (1995) ("[T]he test for misuse, in addition to examining the foreseeability of consumer conduct associated with a product, must take into account the likelihood that consumer will use a product in certain predictable ways, regardless of how the manufacturer insists that consumers ought to act.").

6. Kampen's experience as a mechanic might affect the standard of care to which he is held under a comparative negligence analysis, but it

does not make the use of the jack unanticipated as a matter of law.

7. The LPLA drafters eschewed the terms "defect" and "defective" in favor of the phrase "unreasonably dangerous." *See* Kennedy, *supra* at 584. Nevertheless, the Louisiana courts continue to use the terms "manufacturing defect" and "design defect." *See, e.g., Ashley v. General Motors Corp.,* 666 So.2d 1320, 1322 (La.App.1996); *Delphen,* 657 So.2d at 334.

reach this issue because it held that Kampen's use of the tire jack was not a reasonably anticipated one. On appeal, Isuzu urges, as an alternative basis for affirming the district court's judgment, that there are no genuine issues of material fact regarding whether the tire jack was unreasonably dangerous. *See Chauvin v. Tandy Corp.,* 984 F.2d 695 (5th Cir.1993); *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250 (5th Cir. 1990)(both holding that this court may affirm a summary judgment on grounds other than those relied on by the district court). The Kampens allege three different product liability theories: unreasonably dangerous design, unreasonably dangerous construction or composition, and inadequate warning.

Isuzu claims that the testimony of the plaintiffs' expert does not raise a fact issue as to unreasonable dangerousness because he was unwilling to state the ultimate conclusion that the jack was unreasonably dangerous.[8] With respect to all three of the Kampens' products liability theories, Isuzu contends that Louisiana law requires expert testimony to prove that a product is unreasonably dangerous. The cases relied upon by Isuzu, however, do not support this contention. Rather, before and after the passage of the LPLA, Louisiana courts have held that the jury may infer that a product is unreasonably dangerous from the circumstances surrounding an accident. *See Brown v. Sears, Roebuck & Co.,* 514 So.2d 439, 444 (La.1987), *reh'g denied,* 516 So.2d 1154 (La.1988); *see also Himel Marine, Inc. v. Braquet,* 629 So.2d 425, 427 (La.App.1993) (citation omitted); *Francis v. American Well Serv. & Drilling, Inc.,* 617 So.2d 1329, 1333 (La.App. 1993); *State Farm Mut. Auto. Ins. Co. v. Wrap-On Co.,* 626 So.2d 874, 878–79 (La. App.1993); *Williams v. Emerson Elec. Co.,* 909 F.Supp. 395, 399 (M.D.La.1995).

This is a textbook case in which a jury could infer that the product was unreasonably dangerous from the circumstances surrounding the accident. The evidence shows that Isuzu's tire jack collapsed when used to jack up the car for which it was designed.

The summary judgment evidence does not indicate that the car slipped off the jack, but that the jack collapsed because it was made of soft metal and had an inadequate load bearing surface. To be safe (or more precisely, not unreasonably dangerous) for its reasonably anticipated use, a tire jack supplied with a car should be able to withstand the weight of that car. As discussed in the following sections, there are genuine issues of material fact as to two of the three theories of unreasonable dangerousness advanced by the Kampens that preclude summary judgment on the alternative basis urged by Isuzu.

*1. Unreasonably Dangerous Design*

Under the LPLA, the jury must conduct a risk-utility balancing test to determine whether the design of a product is unreasonably dangerous. LA.REV.STAT. ANN. § 9:2800.56. "A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control: (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." *Id.*

This court's opinion in *Lavespere v. Niagara Machine & Tool Works, Inc.,* contained an extensive discussion of unreasonably dangerous design. We upheld a summary judgment on unreasonably dangerous design in favor of the manufacturer of a metal press. 910 F.2d 167 (5th Cir.1990), *reh'g denied,* 920 F.2d 259, *cert. denied,* 510 U.S. 859, 114, S.Ct. 171, 126 L.Ed.2d 131 (1993). We discussed the types of evidence necessary to avoid summary judgment on a Louisiana design defect claim and faulted the plaintiff for failing to present evidence "concerning the extent of the risk that the alternative design would have avoided[, such as] the frequency of accidents like his own, the economic costs en-

---

8. The expert had done insufficient testing to say with certainty that the Isuzu jack should have been constructed with steel of the strength used

in the Toyota jack. The expert also testified that he could not say whether the Toyota jack would have failed under the circumstances of this case.

tailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design." *Id.* at 183.

We made clear, however, that the rigorous evidentiary requirements imposed in *Lavespere* would not be applicable in all cases. We recognized that

> there may be cases in which the judge or the jury, by relying on background knowledge and "common sense," can "fill in the gaps" in the plaintiff's case, estimating the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine. For this to be possible, however, the product itself, or at least the design feature in question, must be relatively uncomplicated, and the implications of change in design must be such that a layman could readily grasp them.

*Lavespere,* 910 F.2d at 184 (citing *141 S. Main, Inc. v. Magic Fingers, Inc.,* 49 Ill. App.3d 724, 7 Ill.Dec. 444, 364 N.E.2d 605, 608 (1977); *Duke v. Gulf & Western Mfg. Co.,* 660 S.W.2d 404, 412–13 (Mo.App.1983); *Wilson v. Piper Aircraft Corp.,* 282 Or. 61, 577 P.2d 1322, 1325–27 (1978)). We held that the plaintiff's proposed alternative design in *Lavespere,* however, was not the type of uncomplicated design feature to which this rule could be applied. *See also McKey v. General Motors Corp.,* 691 So.2d 164, 169 (La.App. 1997) (agreeing with *Lavespere* 's uncomplicated products analysis, but declining to apply it based on the facts of the particular case).

We conclude that this is an appropriate case in which to apply the *Lavespere* uncomplicated design feature analysis. The proposed alternative design implicit in the Kampens' summary judgment response is a jack made of stronger steel with a larger load bearing surface. A jury could reasonably rely on background knowledge and common sense to conclude that Isuzu could have pro-

vided a jack that would have prevented Kampen's injuries.

The Kampens' expert's testimony also provides some support for this common sense conclusion. Their expert compared the Isuzu jack with a jack designed for use with a 1983 Toyota Corolla, as well as a jack of undetermined origin. The Toyota and Isuzu jacks had the same basic structure, but the material used in the Toyota jack was "significantly stronger" than the material used in the Isuzu jack. The other jack tested was also made from stronger steel and had a larger load bearing surface as well. The expert stated that because the Toyota jack was made out of stronger steel, it "could stand larger loading" than the Isuzu jack. He testified that "the strength of the material contributed to the failure and that the material that is used in this case has less strength than the material that is used in similar jacks . . . ." He concluded that " . . . there was definitely a contribution from the material point of view and, thus, that would relate to the design point." The circumstances surrounding the accident in combination with the expert's testimony [9] present a jury question regarding unreasonably dangerous design.

■ Isuzu also argues that the jack was not unreasonably dangerous in design because it was safe if used in accordance with the instructions provided in the owner's manual, citing *Jaeger v. Automotive Cas. Ins. Co.,* 682 So.2d 292 (La.App.1996) and *Delphen v. Department of Transp. & Dev.,* 657 So.2d 328, 334 (La.App.1995). *See also Prather v. Caterpillar Tractor Co.,* 526 So.2d 1325, 1331 (La.App.1988). We disagree.

Viewing the evidence in the light most favorable to the Kampens, there is a genuine issue of material fact regarding whether the jack could have been used safely even if the warning had been heeded. It is true that Kampen would not have suffered his precise injury if he had not placed himself beneath the car. But that does not mean that the

---

9. We note that a motion to exclude the Kampens' expert's testimony was pending when the district court granted summary judgment based on reasonably anticipated use. That motion was dismissed as moot. It appears from the record that the subject jack was lost by the Kampens' coun-

sel. Our decision does not, of course, prevent Isuzu from re-urging its spoliation claim in the district court, nor would Isuzu be precluded from filing a successive motion for summary judgment were such evidence excluded.

product could be safely used if the instructions were followed. A jack that collapses under the weight of a car presents myriad potential threats to safety, irrespective of whether the person using the jack has placed himself beneath the car. To name an obvious example, the hands of a person changing a tire might be injured by the wheel well if the jack suddenly collapsed. Or, a hand or an arm could be injured reaching for a lug nut that rolled underneath the car. In other words, the jack was unreasonably dangerous (or a jury could so find) even if it had been used in perfect accord with the instructions given. Nothing about Kampen's presence under the car made the failure more or less likely to occur.

Further *Jaeger, Delphen,* and *Prather* appear to be in some tension with the LPLA, which treats the adequacy of a warning as merely a factor to be considered in evaluating the likelihood of damage. Section 2800.56(2) provides:

> An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

LA.REV.STAT. ANN. § 2800.56(2); [10] *see also Bernard v. Ferrellgas, Inc.,* 689 So.2d 554, 560 (La.App.1997) (when conducting a design defect inquiry "the statute and case law further authorize the court to take into account the effect that any warnings may have on the likelihood of damage.").

In any event, *Delphen, Jaeger,* and *Prather* do not control the outcome here. Those cases did not involve a product that, like the jack in this case, may be unreasonably dangerous for its reasonably anticipated use even if the warning was heeded.[11] Thus, those courts were not faced with a product that a jury could find to be unreasonably dangerous even when used in accordance with its instructions.

Under these circumstances, we decline Isuzu's invitation to affirm the judgment of the district court on the alternative basis that there is no genuine issue of material fact as to the jack's unreasonably dangerous design. *See Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987); *Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1054–55 (3d Cir.1997).

### 2. Unreasonably Dangerous Composition or Construction

■ Under the LPLA, a "product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA.REV.STAT. ANN. § 2800.55. The summary judgment record, viewed in the light most favorable to the Kampens, contains a genuine issue of material fact on their defective composition or construction theory. A report from the defendant's expert reveals

---

**10.** There are three basic possibilities: (1) an adequate warning is dispositive of whether a product is defective; (2) an adequate warning is a factor to be taken into consideration in the design defect analysis; or (3) the adequacy of warnings and design defect are two entirely separate inquiries. *See* Howard Latin, *"Good" Warnings, Bad Products, and Cognitive Limitations,* 41 U.C.L.A. L. REV. 1193 (1994). The LPLA drafters opted for the middle ground, requiring the factfinder to consider an adequate warning in undertaking the required risk-utility analysis. Other jurisdictions have adopted an approach similar to that set out in the LPLA, concluding that an adequate warning does not of itself absolve the manufacturer of liability for an unreasonably dangerous product. *See, e.g., Abbot v. American Cyanamid* Co., 844 F.2d 1108, 1115 (4th Cir.) (holding that, under Virginia law, "an adequate warning does not foreclose a design defect claim

in either warranty or tort"), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Uloth v. City Tank Corp.,* 376 Mass. 874, 384 N.E.2d 1188, 1192 (1978) (declining to adopt a rule that "there can be no negligent design ... if adequate warnings are given").

**11.** *See Jaeger,* 682 So.2d at 298 (noting that there was no evidence that the seat belt would not have operated safely if Jaeger had followed instruction's in owner's manual); *Delphen,* 657 So.2d at 333–34 (suggesting that if wheel had been attached in accordance with owner's manual, it would not have fallen off); *Prather,* 526 So.2d at 1331 (noting that "the jury determined that [the plaintiff's] manner of access, contrary to the manufacturer's instructions, and not defective design, caused him to slip and fall").

that an Isuzu jack with the same load rating (1,320 pounds) as the jack that collapsed, began to collapse only when the weight applied to it exceeded 3,540 pounds. From this, the jury could reasonably infer that the jack involved in the accident was materially different from the exemplar Isuzu jack. Accordingly, we reject the alternative basis for summary judgment urged by Isuzu as to the Kampens' unreasonably dangerous composition or construction claims. *See Leonard,* 828 F.2d at 294–95; *Surace,* 111 F.3d at 1054.

### 3. Inadequate Warnings

 We conclude that summary judgment as to the Kampens' inadequate warnings claims was proper on the alternative basis that this claim was wholly unsupported by the summary judgment record. Isuzu warned jack users not to "get beneath the vehicle when using the jack" and to "never get beneath the vehicle when it is supported only by a jack." Under the LPLA, "[a] product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." LA.REV. STAT. ANN. 9:2800.57(A). A warning is adequate if it "would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." LA. REV.STAT. ANN. 9:2800.53(9). The Kampens presented no summary judgment evidence in support of their inadequate warning claim in response to Isuzu's motion for summary judgment. The summary judgment record quite simply contains no evidence that creates a genuine issue of material fact on the Kampen's inadequate warning claim.

### V.

For the foregoing reasons, we AFFIRM the summary judgment rendered by the district court as to the Kampens' inadequate warning claims. We REVERSE the summary judgment as to the Kampens' unreasonably dangerous design and unreasonably dangerous composition or construction claims and remand for further proceedings consistent with this opinion.

DUHÉ, Circuit Judge, dissenting:

With the greatest of respect for my esteemed colleagues, I disagree with their conclusion.

Mr. Kampen not only used the jack to elevate the car, he used it to support the car *while he placed himself in a position of peril beneath.* The manufacturer specifically warned against this later use. That is a classic misuse of the jack. My disagreement with my colleagues is simply that, as I see it, using the jack did not cease when the car was raised. Use continued to suspend the car while Mr. Kampen placed himself beneath the car. His use was not complete when he elevated the car. I would affirm the grant of summary judgment by the district court and, therefore, respectfully dissent.